1    **WO**

2

3

4

5

6                   **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9

10   Lilian Fuentes-Ortega, on her own behalf          No. CV-22-00449-PHX-DGC
     and on behalf of her minor children,
11   H.Y.L.F. and B.M.L.F.,                            **ORDER**

12                              Plaintiffs,

13   v.

14   United States of America,

15                              Defendant.

16

17

18          Plaintiff Lilian Fuentes-Ortega, on behalf of herself and her minor children,

19   H.Y.L.F. and B.M.L.F. (collectively, "Plaintiffs"), initiated this action against Defendant

20   United States pursuant to the Federal Tort Claims Act.  Docs. 1, 17.  Defendant has filed

21   a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Doc. 44.

22   The motion is fully briefed and no party requests oral argument.  Docs. 47, 50.  For reasons

23   set forth below, the Court will grant the motion in part and deny it in part.

24   **I.     Background.**

25          Plaintiffs assert claims relating to the Trump Administration's "Zero Tolerance

26   Policy."  Doc. 17.  The history of that policy traces back to January 2017.  Docs. 17, 44.

27   The policy, which has now been discontinued, applied when federal immigration officials

28   apprehended and detained individuals illegally crossing the U.S.-Mexico border.  Exec.

                                              1

1   Order No. 13,767, 82 Fed. Reg. 8793 (January 25, 2017); Memorandum from the Attorney

2   General to Federal Prosecutors Along the Southwest Border (Apr. 6, 2018),

3   https://www.justice.gov/opa/press-release/file/1049751/download (last visited Nov. 3,

4   2022).    Federal officials deemed children traveling with detained parents

5   "unaccompanied," separated them from their parents, and placed them in the custody of

6   the Department of Health and Human Services' Office of Refugee Resettlement ("ORR").

7   *See id.*; Doc. 44.

8          According to the amended complaint, Fuentes-Ortega and her twelve- and eight-

9   year-old sons crossed the border near Alta Sonora, Arizona in November 2017.  Doc. 17 ¶

10  56.  Customs and Border Protection ("CBP") officials apprehended the family, transported

11  them to a nearby detention facility, and placed them in a holding cell with other families.

12  *Id.* ¶¶ 60, 63, 65.

13         Within about 24 hours, H.Y.L.F. and B.M.L.F. were separated from Fuentes-Ortega

14  and transported to a shelter in California.  *Id.* ¶¶ 88, 104.  Two months later they were

15  relocated to Georgia to live with an aunt.  *Id.* ¶¶ 146-47.

16         In December 2017, Fuentes-Ortega signed a removal order and was deported to

17  Guatemala.  *Id.* ¶¶ 126, 130.   Fuentes-Ortega entered the United States again six months

18  later, was convicted of illegal reentry and sentenced to time served, and was placed in ICE

19  custody.  *Id.* ¶¶ 157-63.  In August 2019, Fuentes-Ortega was released from ICE custody

20  on an order of supervision and reunited with her children in Georgia.  *Id.* ¶ 166.  Plaintiffs

21  now bring claims for intentional infliction of emotional distress ("IIED"), breach of

22  fiduciary duty (on behalf of the children), negligence, negligent supervision, abuse of

23  process, and loss of consortium.  *Id.* ¶¶ 174-219.

24  **II.    Legal Standard.**

25         "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for*

26  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack like this one

27  asserts that the allegations in the complaint are "insufficient on their face to invoke federal

28  jurisdiction." *Id.*  When considering a facial attack, the Court takes the allegations in the

1    plaintiff's complaint as true. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citing

2    *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).  The party invoking the Court's

3    jurisdiction has the burden of establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.*,

4    511 U.S. 375, 377 (1994).

5    **III.    Analysis.**

6           As a sovereign, the United States is immune from suit unless it expressly waives its

7    immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  When no waiver of

8    sovereign immunity has occurred, a court must dismiss the action for lack of subject matter

9    jurisdiction. *See Sierra Club v. Whitman*, 268 F.3d 898, 905-06 (9th Cir. 2001).  The

10   Federal Tort Claims Act ("FTCA") waives sovereign immunity for:

11   
12         personal injury or death caused by the negligent or wrongful act or omission
         of any employee of the Government while acting within the scope of his
13         office or employment, under circumstances where the United States, if a
         private person, would be liable to the claimant in accordance with the law of
14         the place where the act or omission occurred.

15   28 U.S.C. § 1346(b)(1).

16          The United States argues that the Court lacks subject matter jurisdiction because

17   Plaintiffs' claims are subject to the FTCA's discretionary function and due care exceptions,

18   have no private analogy for the allegedly tortious conduct, and are impermissibly based on

19   systemic rather than individual actions.

20          **A.      Discretionary Function Exception.**

21          The discretionary function exception bars claims "based upon the exercise or

22   performance or the failure to exercise or perform a discretionary function or duty on the

23   part of a federal agency or an employee of the Government, whether or not the discretion

24   involved be abused." 28 U.S.C. § 2680(a).  The Supreme Court has established a two-part

25   test for determining when the discretionary function exception applies. *Berkovitz v. United

26   States*, 486 U.S. 531, 536-37 (1988).  First, courts ask whether the challenged action

27   involved an element of judgment. *Id.*; *see Gonzalez v. United States*, 814 F.3d 1022, 1027

28

1    (9th Cir. 2016).  This part of the test is not satisfied if a "federal statute, regulation, or

2    policy specifically prescribes a course of action for any employee to follow."  *Berkovitz*,

3    486 U.S. at 536.  Second, if there is room for judgment, courts determine whether the

4    judgment concerns public policy.  *Id.*  This part of the test "prevents judicial 'second-

5    guessing' of legislative and administrative decisions grounded in social, economic, and

6    political policy."  *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

7         The United States contends that the decisions to prosecute Fuentes-Ortega and

8    detain her separately from H.Y.L.F. and B.M.L.F., and the conditions of their confinement,

9    are subject to the discretionary function exception to the FTCA.  Doc. 44 at 14.  The United

10   States argues that these decisions are textbook examples of prosecutorial discretion and

11   susceptible to policy considerations.  *Id.* at 15, 18.

12        The Ninth Circuit has held, however, that "the Constitution can limit the discretion

13   of federal officials such that the FTCA's discretionary function exception will not apply."

14   *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000).  The opinion in *Nurse*

15   declined to "make any decision regarding the level of specificity with which a

16   constitutional proscription must be articulated in order to remove the discretion of a federal

17   actor."  *Id.*  The United States asks this Court to venture beyond *Nurse* and hold that the

18   discretionary function exception applies unless the Constitution specifically prescribes a

19   course of action for an employee to follow.  Doc. 50 at 4.  The government takes this

20   standard from the Supreme Court's decision in *Gaubert v. United States*, 499 U.S. 315,

21   322 (1991), which addressed the level of specificity required in statutes and regulations to

22   eliminate a government employee's discretion.  Although the Court finds the United States'

23   argument somewhat persuasive, it does not appear to comport with the holding in *Nurse*.

24   That case specifically held that mere allegations of a constitutional violation were sufficient

25   to defeat an early motion to dismiss based on the discretionary function exception:

26        Because of the bare allegations of the complaint, we cannot determine at this
27        stage of the proceedings whether the acts of the policy-making defendants
          violated the Constitution, and, if so, what specific constitutional mandates
28        they violated.  These are questions that will be fleshed out by the facts as this

4

case proceeds toward trial.  They are not questions that can always be easily answered on a motion to dismiss.  Therefore, because the alleged decisions of the policy-making defendants may have been non-discretionary, we must reverse the district court's dismissal of plaintiff's FTCA claims based on those decisions.

*Nurse*, 226 F.3d at 1002.   Other Ninth Circuit cases have followed *Nurse* without prescribing the level of constitutional specificity required to defeat the discretionary function exception.  If anything, these later cases seem to suggest that a mere constitutional violation is sufficient to defeat the exception.  *See Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019), *rev'd on other grounds*, 142 S. Ct. 1051 (2022) ("[If] Defendants did not violate any federal constitutional or statutory directives, the discretionary function exception will bar Plaintiffs' FTCA claims."); *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("As federal officials do not possess discretion to violate constitutional rights, the discretionary function exception does not apply here.") (citations omitted).

The United States acknowledges that district courts in this circuit have, under substantially similar circumstances, rejected its discretionary function argument.  Doc. 44 at 21 (citing *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *Nunez Euceda v. United States*, No. 2:20-CV-10793-VAP-GJSx, 2021 WL 4895748, *3 (C.D. Cal. Apr. 27, 2021); *C.M. v. United States*, No. CV-19-5217-PHX-SRB, 2020 WL 1698191, *4 (D. Ariz. Mar. 30, 2020)).  The courts in each of these cases found that the mere pleading of a plausible constitutional violation rendered the discretionary function exception inapplicable.  *See id.*; *see also F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *3 (D. Ariz. July 22, 2022) (rejecting the same arguments); *Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319, at *4 (N.D. Cal. May 10, 2022) (same).    Plaintiffs allege that separating Fuentes-Ortega from H.Y.L.F. and B.M.L.F. violated the Constitution.  Doc. 17 ¶¶ 29, 52.

The United States argues that these cases are inapposite because they concerned a Zero Tolerance Policy that came into effect after Plaintiffs were detained and separated.

5

1    Doc. 44 at 21.   But Plaintiffs allege that they were subjected to a pilot for the Zero

2    Tolerance Policy that had been expanded to cover the entire border (Doc. 17 ¶¶ 21-22), and

3    the Court cannot conclude that a precursor to a program found likely unconstitutional is

4    itself necessarily constitutional.[1]

5            The Court will not dismiss Plaintiffs' claims at this stage of the case on the basis of

6    the discretionary function exception.[2]

7            **B.      Due Care Exception.**

8            The FTCA bars "claim[s] based upon an act or omission of an employee of the

9    Government, exercising due care, in the execution of a statute or regulation, whether or not

10   such statute or regulation be valid."  28 U.S.C. § 2680(a).  The due care exception avoids

11   "tests by tort action of the legality of statutes and regulations."  *Dalehite v. United States*,

12   346 U.S. 15, 33 (1953).

13           To determine whether the due care exception applies, district courts in this circuit

14   apply a two-prong test found in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005).

15   *See, e.g.*, *A.F.P. v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570, at

16   *14 (E.D. Cal. July 12, 2022); *Nunez Euceda*, 2021 WL 4895748, at *3; *C.M.*, 2020 WL

17   1698191, at *3; *Ferguson v. United States*, No. 15CV1253 JM (DHB), 2016 WL 4793180,

18   at *7 (S.D. Cal. Sept. 14, 2016); *Kwai Fun Wong v. Beebe*, No. CIV. 01-718-ST, 2006 WL

19   977746, at *8 (D. Or. Apr. 10, 2006).  That test provides that the due care exception bars

20   claims if (1) "the statute or regulation in question specifically pr[e]scribes a course of

21   action for an officer to follow," and (2) "the officer exercised due care in following the

22   dictates of that statute or regulation."  *Welch*, 409 F.3d at 652.  The United States bears the

23   "ultimate burden" of proving the applicability of the due care exception.  *Prescott v. United*

[1] The court in *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), found the Zero Tolerance Policy likely unconstitutional.

[2] In its reply, the United States argues that Plaintiffs' negligence claims based on conditions of confinement should be dismissed for lack of jurisdiction under the discretionary function exception.  Doc. 50 at 8.  Plaintiffs clearly state, however, that they are asserting no claims based solely on conditions of confinement.  Doc. 47 at 26.

6

1    *States*, 973 F.2d 696, 702 (9th Cir. 1992).  If the United States fails to establish either

2    prong, the exception does not apply.  *Id.*

3           The United States' motion and reply do not address the two-part *Welch* test, even

4    though Plaintiffs rely heavily on it in their response.  Instead, the government argues simply

5    that the Trafficking Victims Protection Reauthorization Act, 8 U.S.C. § 1232(b)(3),

6    required transfer of H.Y.L.F. and B.M.L.F. to ORR custody within 72 hours after they were

7    deemed unaccompanied on the basis of their mother's prosecution.  Doc. 44 at 22-23.

8           Plaintiffs dispute this assertion, arguing in part that the statute did not mandate their

9    separation, but the Court need not resolve this disagreement.  Plaintiffs also argue that the

10   second prong of the *Welch* test is not satisfied because agents in this case did not exercise

11   due care when they separated Fuentes-Ortega and the children.  Plaintiffs assert that they

12   were housed in harsh conditions, that they were separated in an insensitive and traumatic

13   manner, and that the separation was entirely unnecessary.  Doc. 47 at 13-16.  Other courts

14   have found that separations of this kind lack due care.  *See A.F.P.*, 2022 WL 2704570, at

15   *15.  The government does not address this issue, much less show that its agents exercised

16   due care in their treatment of Plaintiffs.  The government ultimately bears the burden on

17   this issue, and has not shown that the due care exception applies.

18          **C.     Private Analogy Requirement.**

19          The FTCA's waiver of sovereign immunity is limited to "circumstances where the

20   United States, if a private person, would be liable to the claimant in accordance with the

21   law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Plaintiffs

22   must therefore show a "persuasive analogy with private conduct."  *Westbay Steel, Inc. v.*

23   *United States*, 970 F.2d 648, 650 (9th Cir. 1992) (quoting *Woodbridge Plaza v. Bank of*

24   *Irvine*, 815 F.2d 538, 543 (9th Cir. 1987)).

25          The United States relies on a single argument to assert that Plaintiffs cannot show a

26   private analogy — that "only the federal government has the authority to enforce federal

27   criminal and immigration laws and make detention determinations."  Doc. 44 at 22.  In

28   other words, the government argues that there is no private tort analogy to the alleged

7

1    actions in this case because immigration enforcement is solely a federal function.  This

2    argument is not persuasive.  It is possible to "define governmental action in almost any

3    situation narrowly enough to render it uniquely governmental."  *Arvanis v. Noslo Eng'g*

4    *Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir. 1984).  "The better approach is to focus

5    on the behavior involved, not the legal labels applied, and then look for analogies with

6    private conduct."  *Id.*  For example, the Supreme Court has explained that the government

7    might be liable under the FTCA for negligent operation of a lighthouse because "[p]rivate

8    individuals, who do not operate lighthouses, nonetheless may create a relationship with

9    third parties that is similar to the relationship between a lighthouse operator and a ship

10   dependent on the lighthouse's beacon."  *United States v. Olson*, 546 U.S. 43, 47 (2005).

11   "Analogy not identity of circumstance is key."  *Lu v. Powell*, 621 F.3d 944, 948 (9th Cir.

12   2010) (internal quotation marks omitted).

13          Plaintiffs note that district courts presented with similar claims stemming from the

14   Zero Tolerance Policy have recognized private analogies.  *See A.I.I.L. v. Sessions*, No. CV-

15   19-00481-TUC-JCH, 2022 WL 992543, at *5-8 (D. Ariz. Mar. 31, 2022) (acknowledging

16   the existence of a private analogy to IIED, negligence, and loss of consortium); *A.P.F.*, 492

17   F. Supp. at 994 (same); *C.M.*, 2020 WL 1698191, at *2 (recognizing the existence of a

18   private analogy to IIED and negligence); *see also B.A.D.J. v. United States*, No. CV-21-

19   00215-PHX-SMB, 2022 WL 11631016, at *4-5 (D. Ariz. Sept. 30, 2022) (acknowledging

20   the existence of a private analogy to IIED, negligence, and loss of consortium); *F.R.*, 2022

21   WL 2905040, at *3 (same).

22          The United States does not address any of the specific tort claims asserted by

23   Plaintiffs in this case, and the Court will not grant the motion to dismiss on the basis of the

24   government's unduly narrow characterization of the conduct in question.

25          **D.    Direct, Institutional, or Systemic Tort Liability.**

26          The FTCA waives sovereign immunity for the tortious acts or omissions of

27   individual employees.  *Adams v. United States*, 420 F.3d 1049, 1054 (9th Cir. 2005); *see*

28

1    28 U.S.C. § 2671.  Tortious acts or omissions of government agencies or the federal

2    government as a whole cannot form the basis for FTCA claims.  *Id.*

3            The United States argues that the amended complaint improperly asserts

4    institutional tort claims against the government at large.  Doc. 44 at 25.  The Court does

5    not agree.

6            Plaintiffs sue the United States for alleged "wrongful acts or omissions *of its*

7    *employees, including employees* of" various government agencies.  Doc. 17 ¶ 19 (emphasis

8    added).  The amended complaint makes specific allegations regarding individual federal

9    employees and officers.  *Id.* ¶¶ 73-74, 77, 88-89, 123-125.  The Court has subject matter

10   jurisdiction over these allegations concerning individual federal employees.

11           The government's reliance on *Lee v. United States*, No. CV 19-08051-PCT-DLR

12   (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), misses the mark.  The plaintiff in that

13   case asserted tort claims against the United States under an "unclear" theory of liability.

14   *Id.* at *5.  The district court considered the causes of action both as direct liability claims

15   and implied FTCA claims, and dismissed the implied FTCA theory for failure to state a

16   claim, not for lack of subject matter jurisdiction.  *Id.* at *6-7.

17           It is true, nonetheless, that the amended complaint in this case may be read to allege

18   misconduct of government agencies.  Doc. 17 ¶¶ 23-28, 71-72.  To the extent it does, the

19   Court will grant Defendant's motion.  *See F.R.*, 2022 WL 2905040, at *4.

20           **IT IS ORDERED** that Defendant's motion to dismiss (Doc. 44) is **granted** with

21   respect to any claims based on general actions of the United States or its agencies, and

22   **denied** in all other respects.

23           Dated this 14th day of November, 2022.

24

25

26                                    David G. Campbell
27                                    Senior United States District Judge

28